et al. At this time, would counsel for the appellants please come to the podium and introduce himself on the record to begin. Good morning, your honors. John Bailey for appellants. If the court would allow it, I'd like to reserve three minutes for rebuttal. You may. May it please the court. In the landmark 1996 IRIRA statute, Congress specifically sought to end the differential and more favorable treatment given to aliens that unlawfully cross our borders and successfully make it into the interior of the country. Counsel, are you saying that we should look at the legislative record and try to determine what the intent of Congress was? I thought your argument was textual based on only one statutory section and that if that was so, we were precluded from trying to look at congressional purposes. So which is it? Your honor, we do think that the text is clear and there's no need to resort to legislative history. Okay, so let's start with the text. Go ahead. So your honor, if we start with 1225A1, which defines applicant for admission as anyone that is present in the United States or arrives in the United States. And so yes, at 1225A1, all aliens who have not been admitted in the U.S. are going to be deemed applicants for admission. And subsection B2 then mandates detention for aliens that are seeking admission, which applicants for admission necessarily are by definition. Why? Well, your honor, we think that in the context of 1225B2A, the detention provision that we're talking about, that we think the operative clause is, the if clause, is if the alien shows that they are clearly entitled to be admitted. And so we really don't think that seeking admission is doing much more work beyond referencing applicant for admission at the beginning of the subsection. I'm confused by your interpretation of seeking admission. Leaving aside seeking, I think I understand your arguments on that. I thought the statute defined admission as lawful entry. And if it does, how do you seek lawful entry when you're already inside the country? Yes, your honor. We do think it's important that both applicant for admission and seeking admission are using that defined term admission. And because someone that has entered the country without inspection, they have not entered lawfully yet. So by operation of law, they are seeking admission. But I thought, so let's say you enter the country unlawfully. You're here for however many years, say many, many years. You can seek relief from removal, but you can't seek lawful entry. Well, we don't think that's quite right, but that is positioner's position that there is no way to, that asylum does not count for purposes of admission and that withholding and cancellation do not count. Well, they certainly don't use that language, but tell me why that's wrong. Sure, your honor. So I think if we go back to the 2012 BIA decision and matter of Lae Muslosa, that court clearly explained how the BIA clearly explained how seek admission is connected to applicant for admission. They're both getting at that same defined term of art. And so this is not a novel construction to say that by operation of law, applicants for admission are in fact seeking admission. And then I think if you go to 1225A3, this same statute, which requires the inspection of all applicants, for all aliens that are applicants for admission or otherwise seeking admission, or otherwise, has a settled understanding. And its use there, it indicates a subset-superset relationship. Applicants for admission are necessarily otherwise seeking admission. And we think that the 11 circuits en banc decision in the Villarreal case makes that subset-superset relationship clear. We think seven circuits Kleber case does the same thing. And that's also just consistent with the ordinary understanding. It's not surprising that Congress would use seeking admission and applicant for admission juxtaposed in 1225B2A when they both share that same verb, admission. And in common parlance, an applicant for something is also someone that is seeking something. And so... Can I step back? So Congress has provided a specific definition of applicant for admission. It's one that in some ways does not entirely track a common understanding. Congress has defined that term. Congress has not defined the term seeking admission. Therefore, under normal rules of statutory construction, we would use common, ordinary understandings of the term. Okay. So let's put you back into that framework. And again, seeking admission seems to require some act on the part of an applicant for admission. Otherwise, why didn't Congress just say applicant for admission and not put in the phrase seeking admission? Two of the circuits have said, oh, well, it's like college admissions. So an applicant for admission is obviously seeking admission to the college. The second circuit says, no, that analogy does not work because we're not talking about the same universes here. We're talking about congressional choice to define one term and not define the other term. So what is your response, please, to that? I appreciate the question, Your Honor. Our point is that the defined term applicant for admission, that when Congress went on to use seeking admission in the next clause, it was just pointing back at the definition of applicant for admission. If Petitioner's definition is right, then that — Sorry. Pointing back, I don't understand. Why did they need to point back if they wanted mandatory detention of every applicant for admission? It would be very easy just not to use the phrase at all. Your Honor, it would have been equally — they could have just as well just not used the phrase applicant for admission. They could have taken that phrase out of 25B2A. So under either reading — Then you've got a different set of problems. I don't think so, Your Honor. I think you'd be right back to this — you'd be back to Petitioner's understanding. There's going to be surplusage on any side. And what I'd like to point out in that, in IRIRA, in crafting that specialized definition for applicant for admission in 1225A1, and by expressly including aliens that are present anywhere in the United States, I think Congress was trying to do work with that term. And under Petitioner's reading, the applicant — the defined term, the definition of applicant for admission is essentially doing no work anywhere in 1225. They could just point to the seeking admission language or the arriving in language in B1, but there is really no work to be done for that defined term, applicant for admission, in 1225, anywhere, if we construe seeking admission to have this independent requirement. And I think the Eighth Circuit's analysis is helpful here. If you look at the way the 1225A2 is set up, it's subject to subparagraphs B and C. In the case of an alien that is an applicant for admission, if the examining immigration officer determines that they are not clearly — the alien — the operative clause is if that immigration officer determines that the alien, the applicant for admission, is not entitled to be admitted. I think if Congress was trying to add on a separate condition, it would have joined it with another if or an and. And I think the Eighth Circuit's analysis on this point is helpful. I don't think that seeking admission was supposed to essentially swallow the definition of applicant for admission, because as I started, that would just put us back in the same perverse regime that IRIRA was trying to eliminate by not privileging people who break our laws and enter our country. I guess I'm still stuck on the definition of admission being lawful entry, which if I read that into B2A, it's just hard for me to accept your point. Tell me what I'm — Your Honor, I mean, applicant for admission is a defined term. It is a term of art. And so I think we need to understand that in the context of these immigration laws, seeking admission, it is by operation of law that someone who is an applicant for admission is seeking admission. And the BIA recognized that way back in 2012 in the matter of Lemus Losa decision. And then, as I said, I think if you look at A3, that relationship between applicant for admission or otherwise seeking admission, they only use or otherwise one time. And then in that very same section, just a few words later, they used a disjunctive or. I think if we accept petitioner's reading, that just redlines otherwise out of the statute. It creates surplusage, and it also — it ignores the settled understanding that or otherwise creates this subset-superset relationship. I assume you're familiar with Judge Cabrana's concurring opinion in the Second Circuit case. So he says that the Supreme Court has essentially already resolved this issue, perhaps in dicta, but in the Jennings v. Rodriguez case. And it's pretty much true that since then, the circuits following Jennings, including this, have read the statute pretty much the same way as Jennings does. It is the First Circuit rule that even if it was dicta, it was considered dicta, and we have to take that into account in our decision. So what is your reply to that? I absolutely agree that dicta from the Supreme Court is relevant and important. A couple points. I think that the type of dicta is important, and while I'm not sure it has a proper noun label, this was dicta in the background section when it was just setting up the statutory structure. I don't understand the dicta that petitioners are relying on to be wrapped up in the meat of the Supreme Court's analysis, which was about something else entirely. It was not about the relationship between 1225 and 1226. But perhaps more importantly, there's dicta for everybody in Jennings. Jennings says very clearly at page 287 that 1225b2 is supposed to be a catch-all for all applicants for admission that are not in b1, which is the expedited removal provision. And this petitioner would be an example of someone that is not in b1, but in order for it actually be a catch-all, as Jennings said, that must mean that he's in b2. I'll reserve my time. No, no, no. Please finish your thought, and I have another question for you. Yes. So if you take what Jennings says at 287 seriously, that b2 is in fact a catch-all for b1, then it has to be when petitioner is not subject to b1 that they are then caught in b2. And so the point is that there's at least dicta for everyone in Jennings. It's mixed, and we certainly don't think it resolves this question conclusively. I have a different question for you. The Lake and Riley Act passage concerns me somewhat in that your interpretation as it applies to 1226 seems a bit superfluous when you take into consideration the Lake and Riley Act, because if, and I may say this wrong, but if 1225b2 already subjects applicants for admission to mandatory detention, as you suggest it does, why would Congress then have passed a separate provision just last year subjecting only a pretty narrow set of people who are present in the country without admission to mandatory detention under 1226c? Does that inform our interpretation here, or is there some way that I'm seeing this recent passage that's wrong in your view? Well, I think there's a few important things about the Lake and Riley Act. The first is that it is undoubtedly doing independent work by restricting parole, whereas parole is an option under 1225b2a, it is not under the Lake and Riley Act. And secondly, the Lake and Riley Act was passed against the backdrop of 30 years of the executive not applying the law that Congress wrote. And so this is a clear example of Congress... So Congress wasn't interpreting that law correctly when it passed Lake and Riley? No, Your Honor. Congress wrote a very clear statute that aliens that fall into this category shall be detained, but despite that mandatory language, the executive, for whatever reason, through exercise of its enforcement discretion, was not enforcing the law that Congress wrote. And so this is a classic belt and suspenders approach. When it comes to... Is there legislative history that suggests that interpretation is correct? Your Honor, I don't have legislative history from the Lake and Riley Act to point you to, but I think this is a clear example of ever where belt and suspenders approach makes a lot of sense. And the Supreme Court has said in Barton v. Varr that redundancy is not a silver bullet, overlap is in fact common. And I think that Congress was concerned in particular about a specific category of criminal aliens that they did not want out on the street. Against that backdrop, I think the Lake and Riley Act still makes a lot of sense. And the last point I'd have on that is that there's going to be overlap under either view here, and we go into the nitty gritty in our briefing on exactly which grounds for admissibility are going to overlap between the two. But even if you adopt petitioner's interpretation, there's going to be overlap. And for that reason, we don't think that it can overcome the clear text of 1225A2. I just have a pragmatic question. Supreme Court's going to have to decide this. You've already got it circuit split. Other circuits will be addressing this. Suppose your position loses and the petitioner class here is subject to 1226A and not your position. The question is whether it will put people into detention. It's no longer mandatory. What is mandatory, except for certain criminal aliens, is that they be given a bail hearing. So assuming you lose, does your client have any position yet on whether it would exercise its discretion not to put all members of the plaintiff class into detention? Your Honor, I don't think we have a position on that or that I know one to share. I will just say that the bond hearing that is currently available under 1226A is purely a creature of regulation. So even under 1226A, the executive has and has always had the discretion to detain individuals pending removal proceedings without the opportunity for bond or bail. So there are two different questions here. Thus far, I believe it to be true that the regulations as to the availability of bond and bond hearings have not been changed. Are there changes in the work? Has any notice been given of changes in those regulations? Thank you for the clarification. Actually, to my knowledge, I don't know. I don't believe so. The executive is trying to vindicate what it understands to be the best reading of the law, which is the mandatory one. I can't say on the regulation front. Thank you. Thank you. At this time, would counsel for the appellee please introduce themselves on the record? Good morning, your honors, and may it please the court. I'm Adriana Lafay here for the petitioner who's here with us today and for the class. We agree with the Second Circuit's analysis of the statutory text and context bolstered by history and the doctrine of constitutional avoidance. Can I just jump in? Of course. Why did Congress use the term applicant for admission if it meant only to cover those at or near the border? Couldn't it have just said arriving and we wouldn't have this confusion at all? So, in section 1225. In 1225 B2A. B2. So, Congress is seeking admission there to, I think the distinction between the term arriving is that an arriving alien is someone who's at a particular location, and some arriving aliens then withdraw their application for admission and then are not, no one has to determine whether they are entitled to be admitted. So, I think that's the, that's the distinction there. Seeking admission is, of course, a term with long usage in the INA. It was in this provision before IRA and it's used throughout the INA to refer to someone who is seeking to enter the United States at the port of entry. And just to back up, of course, the statute has two terms. Applicant for admission. And it also requires, the statute applies in the case of an applicant for admission who is also seeking admission. And as the panel noted earlier, applicant for admission is a defined term. And, of course, our client is an applicant for admission under that deeming provision. But it's a deeming provision. One question for you, because I think there were a couple of words added that I'm struggling with. You said who is also seeking admission, but that who is also isn't in the statute. So, and that seems to be material because it could potentially change a term that's meant inartfully to refer back to something else and instead mean adding a condition to. So there isn't the is also. Should that concern us? No, Your Honor. So the first one is clearly a condition, applicant for admission. And then it says when the examining officer determines that an alien is seeking admission. And then it goes on. And so the alien there has to be seeking admission, which the government doesn't dispute. The government just says, you know, everyone who's an applicant for admission is seeking admission. But that, of course, you know, is inconsistent with the fact that this is a deeming provision that we're talking about. This is, and by deeming something, it means that we're describing something, we're treating something as something that it's actually not. That deeming provision applies to applicant for admission. Seeking admission is not defined, but admission is. And so what the government has done is import into seeking admission this separate term, applicant for admission. And the fact that the two terms are used in conjunction so close together, and they're used again in conjunction in a different way in A3, right? This tells us that these terms are doing different things and that they are overlapping, but not that they're still distinct terms. So this statute applies to someone who is applicant for admission when they are seeking admission. And as the panel pointed out earlier, seeking has an ordinary meaning, and someone who's inside the United States cannot be granted lawful entry. They cannot seek admission under this statute because they are already present in the United States. We also have to look at this provision in the context of the statute as a whole. And I want to point out two things in particular that the government cannot explain here. One is the language of section 1226, so much of which is rendered completely obsolete under the government's reading. And the other is section 303B of IRIRA. And let me start with that one because it hasn't been discussed yet today. So section 303B of IRIRA is the provision through which Congress allowed for this two-year delay of the implementation of mandatory detention under section 1226C. And not only allowed for that delay, but also provided a narrower set of custody rules about who would be mandated to be detained during that two-year period. And, you know, the Second Circuit noted that the government could not explain why, and the government also did not explain why today a Congress that was so focused on bed space, that it was selecting certain non-citizens who entered without inspection and had criminal predicates who would go free during that two-year period if they were not a danger of flight risk. The government cannot explain why that same Congress would say that those who entered without inspection and had no criminal predicates would be subject to a different sweeping detention mandate. It just doesn't make any sense given what we know Congress was trying to do in IRIRA with mandatory detention. Let me ask you a question, if I could, about the application of the definition in 1225A1. Where do you see that broad definition doing work in the statute if we were to read 1225B2 the way that you urge us to? Does the broad definition become to some degree irrelevant if we adopt your reading? No, not at all, Your Honor. That definition is, of course, used to change the whole removal system and the way removal is part of the change of how removal operates, and people who are applicants for admission post-IRIRA have the burden of proof in removal proceedings, which is a fundamental change from before, but also within 1225 itself, Congress provides for inspection of all applicants for admission, that's under A3, and then provides for expedited removal, and this was a very significant change made in IRIRA, of applicants for admission, including those who are arriving and are subject, you know, subject to particular inadmissibility grounds, and those who are recent entrants, people who came here within the last two years, are permitted to be subjected to expedited removal under Congress, under IRIRA, and that's a fundamental change that is part of what Congress was doing there with the term applicant for admission. I want to turn a little bit to the way... Sorry, can we just stay on B2A? You argue that it doesn't cover the petitioner, and let's say I agree with you, but we still have a statutory provision that subjects some people to mandatory detention. Who does that statutory provision cover? So this statute has been in use for decades, Your Honor. It applies, it's been applied to visa holders, lawful permanent residents who are coming to the port of entry, who are inspected, and there's some issue, whether it's crime-based, inadmissibility, or other ground, why they can't be let in. It has also been used for decades for asylum... So those people would be subject to mandatory detention? Yes. So they come with a lawful visa, or valid visa, but maybe they're inadmissible because of a past crime, or health grounds, or something like that? Yes, Your Honor, and this is also the provision that's been used when an asylum seeker, for example, comes to the port of entry. That person can be subject to expedited removal, but when expedited removal is not used, they've been subject to mandatory detention under 1225b2. I want to address a little bit the government's arguments about a3 of the statute, and then I'd like to come back also to the text of section 1226. The government points and hangs a lot of its argument on the or otherwise language in section 1225a3, but this provision is actually very helpful to us. First, it shows Congress, again, using these terms applicant for admission and seeking admission together in ways that show us that they are terms with two different meanings. And second, as the government has sometimes pointed out, a word is known by the company that it keeps here, and here admission is being used in conjunction with readmission and transit. And so when we're talking about someone seeking admission, readmission, or transit, if we look at those other two terms, those two terms describe discrete things that someone is seeking at a port of entry. They do not describe a continuous status of being present in the United States without having been admitted. They describe a discrete moment in time and a discrete action. Could we reach that same conclusion then without the word or otherwise? I guess what I'm getting at is, does your proffered interpretation render that phrase superfluous? No, not at all, because these are overlapping categories. And had Congress simply said or, there might have been confusion about whether these were intended to be categories that were being used in the disjunctive without any overlap. And or otherwise is a phrase that conveys that overlap. And so this provision is providing for the inspection of people who are applicants for admission, whether or not they are seeking admission, and also of people who are seeking admission, readmission, or transit, whether or not they are applicants for admission. So that includes people who we might want to inspect who are not seeking admission, such as returning lawful permanent residents. They are applicants for admission because they are arriving at the port of entry, but they're not seeking admission because under 1101A13C, a lawful permanent resident who's coming back to the United States is not deemed to be seeking admission unless particular conditions are satisfied, such as prior criminal conduct and things like that. So this provision provides for inspection of those returning lawful permanent residents. It also provides for inspection of people who are seeking admission, but not applicants for admission. For example, the people at the pre-inspection sites overseas. They're not applicants for admission because they're not in the United States, but they are seeking admission. They're being inspected by a U.S. immigration officer seeking admission into the United States. And that same provision helps to explain why our provision, our reading actually does not create any surplusage in 1225B2. 1225B2 in our reading has both provisions, applicant for admission and seeking admission, doing work, because only those who are applicants for admission and seeking admission are then subject to the rest of the provisions. So someone who is at a pre-inspection site, and by the way, this was also part of IRIRA. IRIRA mandated pre-inspection sites for the first time. Someone who is getting inspected at one of those sites, if they are not permitted to come to the United States, they don't, of course, they don't get detained. It might seem unnecessary to specify that, but they also don't have a right to a removal proceeding. And that's what 1225B2 is doing, right? It's saying someone is detained for a removal proceeding. And so if applicant for admission was not there, it would seem that those people might have a right to a removal proceeding under 1225B2. Could your interpretation also be satisfied by the use of the words arriving in? That's used elsewhere in 1225. That might suggest a different reading in B2A, or am I missing something on that point? So arriving is a related term, and of course... And Congress used it. And Congress used it, and there's certainly, there's no canon of interpretation against Congress using different words to mean similar things in different provisions. I guess that's the difficulty that we as a court face, because that same argument is what I understand both of you to be making. You can use similar terms, not the exact same terms, in the same statute. And you're both, your issue is you say we can read this the same as arriving in, and the government is saying we can read this term as the same as seeking admission. So that's... Right, but our reading is the one that actually tracks the meaning of admission. And not only that, it tracks the usage of seeking admission. Seeking admission is used throughout the INA. You will not find a provision in which seeking admission is used to speak about the status of being in the United States without having been admitted. It is used to describe throughout the INA the process of coming into the country, seeking entry from the outside. The couple of exceptions are where it's used to also mean adjustment of status within the United States. But it is not used to mean simply the state of without admission in the United States. And the one provision that the government points to, 1182A9B, and the citation to Lemeslosa, right, that is just saying that someone who entered the United States, left, and then came back, is being treated as seeking admission again, right? Sorry, not came back, is seeking to come back again. That statute describes that person who had already entered the United States as now seeking admission again. But the fact that Congress used again there to describe someone who was trying to come back into the United States a second time is not an indication that Congress was treating seeking admission there to mean this continuous state of being, differentiating from how it's used throughout IRIRA. And if I can just wrap up, of course, we also have to read this in conjunction with Section 1226C. And there, the mandatory detention provisions include two subparagraphs, subparagraph A, E, and part of D, that apply only to people in the United States who have grounds of inadmissibility. That is people who entered without inspection. If you take people who entered without inspection, out of Section 1226, you are wiping out those statutes completely. Now, the government says that statute could be playing a role in preventing parole, but that's simply inconsistent with PREOP and completely foreclosed by the Supreme Court's explanation of how Section 1226C is simply an exception to A, and everybody who is subject to the detention mandate under C has been detained under Subsection A. So that explanation is foreclosed by PREOP, and the text and context here clearly provide, as Jennings has already explained, that B2 applies to those seeking admission at the border, and Section 1226 applies to those inside the United States. Thank you. Thank you. At this time, would counsel for the appellants please reintroduce himself on the record to begin? He has a three-minute rebuttal. John Bailey for appellants. May it please the Court. So I'd like to start, now that our petitioner's made clear their real sense of how 1225B2 can apply. They say that it can apply at the border, but really they have to mean that it can only apply at ports of entry, which would be directly contrary to 1225B2C, which talks about contiguous entries and how it applies at the ports of entry or not. But remember, petitioners have said that applying for asylum is not seeking admission. They've said that applying for withholding of removal is not seeking admission. They've said that applying for cancellation is not seeking admission, and being paroled is also not seeking admission. If you are not at a port of entry, there is no other way to seek admission under their definition. It's just an impossibility. You can't go up to a border agent outside of a port of entry and hand them visa papers. If asylum doesn't count, if withholding doesn't count, if cancellation doesn't count, if parole doesn't count, there is just no way under their definition for you to seek admission outside a port of entry, even, I think, potentially before you even cross the border. I don't know what that means. If someone is trying to cross the border outside a port of entry to seek asylum, well, they say that's not seeking admission. So that provision, under their definition, wouldn't even apply to that person. And I want to be clear. They've talked about how someone can be seeking admission but not an applicant for admission. We completely agree with that. We think that seeking admission is a slightly broader category than applicant for admission. But because applicant for admission, we believe, is a subset of seeking admission, when they're both used in 1225b2a, we think there's not independent work being done by that reference to seeking admission. But we fully agree that you can be seeking admission and not be an applicant for admission, like those pre-inspection sites that my friend on the other side mentioned. So are you still adhering to your, or aligning yourself with your college applicant analogy? Yes, Your Honor. I think that confirms, I mean, it's a tricky, it's tricky, right? Because we have a defined term of art and then we have a phrase seeking admission where part of it's a defined term and part of it is not. We think the plain language analysis supports the operation of law argument that I made earlier that the BIA adopted in 2012. I think for all those reasons, we don't think that seeking admission in 1225b2a is doing a lot of independent work. And I want to address the two-year delay point that my friend on the other side brought up, and I understand that the concurrence in the Second Circuit was interested in this. There's some significant differences there because, again, the ability for parole under 1225b2a, that's a safety valve that doesn't exist under c. And further, under 1226c, it says that the Attorney General has to devise and implement a strategy in consultation with local and state law enforcement for identifying these criminal aliens. That, on the other hand, 1225b2a is going to operate based on essentially encounters in the interior, which the Executive does have some control over, how much they're going to go into the interior. And the last thing I'll say is that criminal aliens are a unique population and there may have been special concerns about giving the Executive sufficient time to come up with the spaces that might be needed to handle people who were severe criminal aliens. And so the Court has no further questions. Just one other question. You, I think, heard Petitioner's response to your point that the definition in 1225a1 still does work under their reading. You were suggesting, I think, that it doesn't do any work. Could you just respond to their argument on that point? Well, they started by saying that it does work in 1229a, and it would be very surprising for Congress to put the definition, the one time that it appears, in 1225b if it was primarily doing work in an entirely different statutory section. So I don't consider that to really be a point in their favor. And perhaps I wasn't tracking all of her answer, but I still don't understand how this unique definition for application for admission is doing work when really it could just be redlined from 1225b2a itself or, as Your Honor mentioned, substituted within the much more common phrase, arriving in something that actually makes sense. And they've, in fact, put forward a definition of seeking admission that I don't see how that works at all, given what I've said about their position on asylum withholding cancellation and parole. Thank you, Your Honors. That concludes argument in this case.